UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward William BLUM, a/k/a Edward William Himes, and Nancy Roberts Blum, Defendants-Appellants.

No. 84–7210.

United States Court of Appeals,
Eleventh Circuit.

Feb. 22, 1985.

Edward Massey, Mobile, Ala., for defendants-appellants.

Arthur Madden, III, Mobile, Ala., for Nancy Blum.

Ginny S. Granade, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

## I. STATEMENT OF THE CASE

Nancy and Edward Blum, husband and wife, appeal from their convictions on a 13 count indictment for mail fraud in connection with a scheme by which they were charged with ordering merchandise from various companies throughout the country with an intent not to pay for it and selling it at flea markets or at auctions, then moving to a different location without paying for the merchandise. It was alleged that the Blums obtained credit for the scheme by using Ed Blum's legitimate fireworks business, Giant Sales, as a credit reference.

## II. ISSUES

The issues presented for decision by this Court are as follows:

1. Should merchandise and other items seized by the FBI from the Mini Storage warehouse where the Blums stored merchandise have been excluded from evidence?

 (a) Was the warrant authorizing search of the warehouse so broad as to be a "general warrant" in violation of the Fourth Amendment?

 (b) Were certain items seized at the warehouse which were not identified in the warrant properly seized within the "plain view" exception to the warrant requirement?

2. Was Nancy Blum's attorney, Robert Brooks, burdened by an actual conflict of interest which denied Mrs. Blum the effective assistance of counsel?

## III. DISCUSSION

1. *Admission of Evidence Seized from Mini Warehouse*

### (a) *General Warrant?*

■ Appellant Edward Blum argues that the district court erred in failing to suppress evidence seized under a search warrant so broad as to be a "general warrant" in violation of the Fourth Amendment. The Fourth Amendment requires a warrant "particularly describing the place to be searched, or the persons and things to be seized." The warrant in this case authorized officers to seize the following items:

> Porcelain ware, toys, furniture, baby products and miscellaneous merchandise fraudulently obtained from vendors throughout the United States which are items fraudulently obtained in violation of Title 18, U.S.Code, Sections 1341, 1343 and 2314.

Appellant argues that the language "miscellaneous merchandise fraudulently obtained from vendors throughout the United States which are items fraudulently obtained in violation of Title 18, U.S.Code, Sections 1341, 1343 and 2314" renders this an invalid "general warrant." Appellant relies on *United States v. Burch*, 432 F.Supp. 961 (D.Del.1977), *aff'd.* 577 F.2d 729 (3d Cir.1978) (warrant for other unknown articles believed stolen from Penn Central Railroad held overbroad) and *United States v. White*, 541 F.Supp. 1181 (N.D. Ill.1982) (warrant for "all books, records and merchandise which are fruits, evidence and instrumentalities of violation of [the mail fraud statute]" held overbroad because mail fraud statute embraces enormous range of criminal activity). The appellant distinguishes *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) which upheld a warrant for a detailed list of items "with other fruits, instrumentalities and evidence of crime at this [time] unknown" because the Supreme Court found in *Andresen* that the context made it clear that the items to be seized related to a single specified crime, the sale of a single piece of property.

The government responds that a description is "sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Betancourt*, 734 F.2d 750, 754–55 (11th Cir.1984). Further, the circumstances often make an exact description impossible and the judicial officer issuing the warrant must weigh the practical necessities of law enforcement against the likelihood of a violation of personal rights of the one whose possessions are to be searched. *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A 1981). Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit. *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.1982), *cert. denied*, ── U.S. ──, 104 S.Ct. 69, 78 L.Ed.2d 83. In this case, the government contends that the affidavits provided by an FBI agent support probable cause that all of the merchandise in the Mini Storage warehouse was obtained by fraud. A tipster, providing corroborating details, had said that the Blums were ordering merchandise from companies all over the United States, storing it in the vicinity of the Mini Storage warehouse, not paying for it, and that the Blums had moved away from the city. The government thus had probable cause to believe that the merchandise was obtained by fraud but did not know precisely what the merchandise was or from whom it had been obtained. Under these circumstances, the government argues that the warrant was sufficiently specific. *United States v. Smith*, 686 F.2d 234, 238 (5th Cir.1982) (because there was probable cause to believe that all the contents of a truck were illegal, the warrant was held sufficiently particular). *See also, United States v. Offices Known as 50 State Distributing Co.*, 708 F.2d 1371 (9th Cir.1983), *cert. denied*, ── U.S. ──, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984).

The government has the better argument. The warrant was as specific as possible under the circumstances as to all merchandise seized.

### (b) *"Plain View" Exception*

Appellant Edward Blum contends that certain items seized during the search of

the Mini Storage warehouse units were erroneously admitted under the "plain view" exception to the warrant requirement. These items included bills, invoices, bills of lading, and yellow pads with handwritten notes about orders. None of these was mentioned in the warrant. They were found in two open boxes and a glass cabinet in the Mini Storage warehouse units.

 To be admissible under the plain view exception, the items must be seized by an officer (1) who has independent justification for being in a position from which the items can be viewed, (2) who discovers the items inadvertently, and (3) to whom it is "immediately apparent" that the items are evidence. *Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971); *United States v. Slocum,* 708 F.2d 587, 605 (11th Cir.1983); *United States v. Antill,* 615 F.2d 648, 649 (5th Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 200, 66 L.Ed.2d 85 (1980). Appellant concedes that the first and second requirements were met, but argues that the requirement that the officer immediately recognize the items as evidence was not met. The appellant argues that there is no way the agent could immediately have recognized a box full of miscellaneous papers as evidence without going through the box and reading each item to determine its evidentiary importance.

The government responds that the agents had probable cause to believe the items constituted evidence. The government contends that the "immediately apparent" requirement mandates only that the officers have probable cause to believe the items are associated with criminal activity and that probable cause requires only facts sufficient to "warrant a man of reasonable caution in the belief ... that certain items may be ... useful as evidence of a crime." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Under this standard, the government contends that the officers immediately recognized the items in plain view as having evidentiary value.

Since appellant concedes that the items were in plain view, the government again has the better argument. Once the agents saw the bills, the bills of lading, etc., the evidentiary value of these would be apparent. *See United States v. Slocum,* 708 F.2d at 605.

### 2. *Ineffective Assistance of Counsel*

Appellant Nancy Blum argues that her counsel, Robert Brooks, had a personal conflict of interest which denied her the effective assistance of counsel. Although Brooks represented both Nancy and her husband Ed at trial, it is not this dual representation that she is challenging. Rather she argues that Brooks's prior involvement in the business affairs of Giant Sales and of Edward hindered Brooks's presentation of the defense of intent to repay because full presentation would have required that Brooks become a witness or that his prior representation become an issue. Appellant points to three specific instances in which she contends an actual conflict affected Brooks's representation:

1. Brooks's decision not to testify about letters he wrote for Ed Blum offering to pay for the merchandise.
2. Brooks's agreement to present the testimony of Ramer by stipulation. Brooks had represented Ed Blum in a suit against Ramer to collect money Ramer owed Brooks for goods sold.
3. Brooks's failure to elicit from the Mini Storage manager that Ed had given her Brooks's telephone number as a contact. The witness testified that Ed gave a local number and that she was unable to contact him through it.

Appellant argues that prejudice is presumed if she demonstrates that her counsel actively represented conflicting interests and that the actual conflict adversely affected his performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 2056–57, 80 L.Ed.2d 674 (1984). In the dual representation context, an actual conflict exists "if counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant

would damage the defense of another defendant whom the same counsel is representing." *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir. Unit B, 1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). Appellant argues that her counsel was prevented from introducing probative evidence in an effort to shield his personal involvement from the jury. Appellant also relies on *United States v. Winkle,* 722 F.2d 605 (10th Cir.1983) (actual conflict when defense attorney required to cross-examine government witness whom he has formerly represented on issue of which attorney had actual knowledge).

In this case, the court held a *sua sponte* hearing concerning the dual representation in February of 1983. This dual representation is not at issue here. There is here no contention by Mrs. Blum that there was "probative evidence or plausible arguments that would significantly benefit [Ed] that would damage [her] defense ... whom the same counsel [was] representing." *Baty, supra.* Her only argument is that their counsel Brooks had an interest that conflicted with both Ed and her. The United States relies on the absence of any showing of actual conflict between Brooks and Nancy and on a waiver by Nancy of a conflict, if any was shown to exist.

As to the first contention, the government argues that, since neither party contends that there was insufficient evidence to take the case to the jury, Nancy depended solely on her claim that she was merely a housewife and had nothing to do with business decisions made by her husband, Ed. Relying on that defense, she cannot, says the government, complain of any prejudicial effect that a conflict of interest between Brooks and Ed might have had on his interest.

Turning then to the waiver argument, the government agrees that *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975), sets the standard for determining whether a

defendant waives his right to insist on conflict-free counsel. *Garcia* describes the procedure by which a defendant can make such waiver.

As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language." Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.

*Garcia,* 517 F.2d at 278 (citations omitted).

The Court, in addition to the *sua sponte* hearing mentioned above, held a hearing four days before trial when the Court first became aware of Brooks's prior representation of Ed Blum. At this hearing, most of the questions were directed to Ed because he was the one whom Brooks had previously represented. Both Nancy and Ed, however, responded affirmatively to the Court's question as to whether they were content to proceed with Brooks as counsel after the Court had explained the potential problems to them.[1] The Court then ad-

---

**1.** The Court explained that documents that might be introduced by the United States included a letter written by Brooks to some of the complaining merchandise shippers, explaining

that he had been engaged by Ed Blum to set up a trust fund out of which the claims would be paid, and calling on the shippers to send a revised statement of Blum's obligation. The

dressed Mr. Blum directly and the following interchange occurred:

> The Court: ... And, Mr. Blum, I'm making this for your study and observation yourself because you are the one that will be put in a position of embarrassment, should any of this occur. Of course, I don't know whether it will or not.
>
> If I had to guess I would say it will occur and I think that it is something that you ought to understand because it is my opinion a very present danger to any defense of this nature that you intend to proffer.
>
> Do you understand what I'm saying to you, sir?
>
> The Defendant Edward Blum: Yes, sir.
>
> The Court: Do you have any position in the matter with respect to counsel?
>
> The Defendant Edward Blum: I don't really have any position other than the fact that I feel, your Honor, that we have had the man for almost a year for our attorney and I can't see getting another attorney at this point.
>
> I don't know whether this really is going to have any bearing on the case or not. I can't see where it would myself. Of course, I know the case from my standpoint and they know the case from what they are trying to present to them.
>
> The Court: It is a question of how will the jury receive it and if the jury receives it as an indication of a fabrication that Mr. Brooks has participated in, it is going to hurt you.

Court then made several explanations to the Blums, including the following which was made to counsel, Brooks, and Mr. and Mrs. Blum who had been called into court for the particular purpose of making a decision with respect to a possible conflict of interest:

> The Court: I think your testimony would be prejudicial to your client if you were called as a witness on behalf of the Government in any respect because your representation in the eyes of the jury might well be compromised.
>
> If the jury even got a hint of a suggestion by any such testimony as might be elicited from you that you participated in any way in the undertaking, whether that be true or whether that not be true, then certainly your client is

> The Defendant Edward Blum: I understand that.
>
> The Court: Not only going to hurt you but it is probably going to get you convicted if that's the way they perceive it and that's why the law attempts to protect people from being put in a position and that's not to say that there is any legitimacy to it but it is the position or the posture of the case which it will be in before a jury and it is a real and present danger. I think you ought to be fully cognizant of it and to make your determination based on it.
>
> I can tell you that if we do not abort the trial at this point and it works itself around to the position, after the Government has presented its case, and after any defense has been presented, that the Government does call you as a witness, I'm going to abort the trial because I think that it will prejudice the defendants and I don't think I have any choice so I want to point that out to you and I don't want to have to go through that spasm if we don't have to.
>
> It may well be that we will get to the end of the case and the necessity of calling Mr. Brooks as a witness will fade into the twilight and it never will occur, but I think everybody ought to understand the potential because it could be devastating.

> \* \* \* \* \* \*

going to be prejudiced by that and under the evidence that the Government has outlined, there is going to be the possibility.

> The execution of the search warrant in April, no payment before June, discovery of the condition by the defendant in June, employment of counsel after that discovery and an undertaking by letter to advise the parties that they will be paid might well be considered by a jury as building evidence in order to manufacture a defense that was non-existent.
>
> If that is going to be what is going to be presented to the jury, I think it will be highly prejudicial.

The Court: From that posture it is up to Mr. Brooks because this Court is not in a position to deny him the right to represent them. I think it ought to be clear in the minds of counsel and the clients the potentials involved in the matter should that occasion arise and you exercise your own good judgment as to what you want to do; but I'm obligated under the law to point out all of the pitfalls so that your client as well as counsel can make their valued judgments based on an intelligent position. And if you are content and if Mr. Blum and Mrs. Blum are all content to proceed on that, knowing what the potentials are, then we will just proceed.

Mr. Brooks: Do you understand what it is?

The Defendant Edward Blum: Yes, sir.

The Court: Mr. and Mrs. Blum, are you content to go on that basis?

The Defendant Edward Blum: Yes, sir.

The Defendant Nancy Blum: Yes, sir.

The Court: And you are content, Mr. Blum?

The Defendant Edward Blum: Yes, sir.

Later, during the course of the trial, the court excused the jury and then addressed Mr. and Mrs. Blum with the following statement:

The Court: ... Mr. Blum, if you will recall we had a discussion before this case ever commenced in regard to the potential problems with Mr. Brooks representing you civilly as well as criminally. Do you recall that?

The Defendant Edward Blum: Yes, sir.

The Court: It now appears from this witness that Mr. Brooks' name appears in the records and correspondence dealing with the handling of these storage warehouses. That, again, could present, in the eyes of the jury, a problem with the representation that we have. I have no idea or no way of knowing how they may react to Mr. Brooks' name cropping up as your attorney or as a reference or for any other reason that his name might appear.

It is not beyond the realm of the possible, though I do not imply to you that they will draw such a conclusion, that a jury might well think that Mr. Brooks was part and parcel and in complicity with the efforts involved and could serve as a means of destroying, in the eyes of the jury, any confidence that they may have in any position that he has advanced.

Now it may not do that, I don't know, but that is the problem that I was trying to point out to you and to Mrs. Blum when we first discussed this issue. Now we have come to a point where it is going to start cropping up. I don't know how the Supreme Court is ultimately going to rule on your right to representation by the client [sic] that you desire to have, that is an issue that is before the Supreme Court right now and being argued.

Do you understand what I'm trying to tell you as the potential problem?

The Defendant Edward Blum: Yes, I do.

The Defendant Nancy Blum: Yes, I do.

The Court: Are you content to proceed with it in this posture?

The Defendant Edward Blum: I believe I am, your Honor. I don't see any way out now.

The Court: How about you, Mrs. Blum?

The Defendant Nancy Blum: I feel the same way.

The Court: Well, now you say you don't see any way out of it now. I don't want to put this case in a posture for you to come back at a later time in the event this goes badly for you all the way down the line, and you were convicted on a Habeas Corpus petition that you had rotten advice from your attorney and that you got a hosing in the court because of that.

The Defendant Edward Blum: I understand that, your Honor.

The Court: Well, with that knowledge do you want to go ahead with this?

The Defendant Edward Blum: I do.

\* \* \* \* \* \*

The Court: It is not going to put this case in jeopardy because Mr. Blum is going to have to agree to it and he is going to have to waive it or I'm not going to proceed with it.

\* \* \* \* \* \*

The Court: Do you understand that?

The Defendant Edward Blum: Yes, sir, and I will agree to it and I will waive it.

The Court: And you understand it could well result in your conviction?

The Defendant Edward Blum: Yes, sir.

The Court: Do you understand that, Mrs. Blum?

The Defendant Nancy Blum: Yes.

The Court: I think you're nuts but that's your decision.

■ We are satisfied that this repeated effort by the trial court to be certain that he had fully informed the defendants of the possibility of injury from their continuing to permit Mr. Brooks to represent them presents us with one of the exceptions noted in *Garcia,* in which we said:

> Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.

*Garcia,* 517 F.2d at 278 (citations omitted).

No clearer case of "sandbagging" justice could occur than for us to hold that in spite of all of the warnings given to Mr. and Mrs. Blum, the latter could now rely upon a claimed conflict of interest as a basis for reversing her conviction. We do not countenance such a procedure.

The judgment is AFFIRMED.