STATE of Missouri,
Plaintiff-Respondent,

v.

Charles WATSON, Defendant-Appellant.

No. 14218.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 19, 1986.

Robert G. Duncan, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

This case stems from the operation of a "chop shop." The defendant was convicted of 13 felony offenses of receiving stolen property. § 570.080. His cumulative sentence was imprisonment for 11 years and a fine of $16,500.

The defendant does not question the sufficiency of the evidence. By the first of his two points of error, he complains of the admission in evidence of items seized from his shop. That complaint is based upon the asserted invalidity of a search warrant. An outline of the facts pertaining to that warrant follows.

For several months before April 13, 1984, a blue automobile, occupied by two or three people, had been repeatedly observed passing through Rolla. It was usually seen between 7:00 and 8:00 a.m. Rolla police officers learned the owner of the blue automobile was Willie Ray Morrow from St. Louis. They also learned there was an outstanding automobile theft warrant for his arrest.

On April 13, 1984, Willie Ray Morrow and two other occupants of the blue automobile were taken into custody in Rolla. The other occupants were Edrick Morrow, a cousin of Willie Ray Morrow, and Lisa Freeman. Officers of the Missouri Highway Patrol interviewed Edrick Morrow.

Edrick Morrow told the officers that on the morning of his arrest the threesome had delivered a stolen silver and blue Chevrolet pickup with a camper to a location near Alton. He also said the evening before they delivered a stolen 1983 Buick to that location. He further said that for some time they had delivered other stolen vehicles to that location. Edrick Morrow stated they dealt with a man named "Charlie." He later identified a picture of the defendant as "Charlie." Edrick Morrow rode with the officers and directed them to the location where the vehicles were delivered. Edrick Morrow said his cousin, Willie Ray Morrow, made his living stealing cars. The officers verified there were outstanding warrants for Willie Ray Morrow and that he had been convicted of auto theft. They verified other information given by Edrick Morrow.

The officers returned to the delivery location with the sheriff. The sheriff had been otherwise previously informed the defendant was dealing in stolen motor vehicles. He identified the delivery location as a residence occupied by the defendant. The sheriff then conducted the officers to a nearby salvage yard. This property is also referred to as the shop. The sheriff identified it as owned by the defendant's mother and occupied by the defendant. As the officers drove past this property, they saw the top of a gray GMC or Chevrolet pickup with a camper.

The officers and sheriff then contacted the prosecuting attorney. The prosecuting attorney prepared applications for search warrants for the residence location and for the salvage yard. The affidavit pertaining to the shop or salvage yard contained the following salient statements. The affiants believed a stolen late model blue and gray Chevrolet pickup with a camper and a stolen 1983 Buick were kept at the premises. The premises were occupied by the defendant. A reliable informant told them he had delivered the stolen vehicles to the defendant within the past two days. They had verified information provided by the informant. On that date they saw a pickup matching the described pickup on the described premises.

The affidavit pertaining to the residence property, with the exception of the last

statement, was substantially the same. In that affidavit the concluding statement was that the described vehicles had been delivered to the defendant at the residence property. At 6:33 p.m., the Associate Circuit Judge issued a search warrant for the residence property and a search warrant for the salvage yard. As prayed in the applications, each warrant directed the seizure of a late model blue and gray Chevrolet pickup with a camper, a 1983 Buick and other stolen vehicles and parts of stolen vehicles. The warrants were executed by the sheriff with assistance by officers of the Highway Patrol. The items seized included two vehicles and a multitude of parts of stolen vehicles.

The defendant's first point is that the trial court erred in admitting "in evidence items seized from the appellant's shop which were searched for and seized under the authority of a search warrant which was issued without a showing of probable cause to believe the items to be seized were then located at the shop." The items referred to were parts of stolen vehicles. To support this point, the defendant advances several arguments to establish the invalidity of the search warrant for the salvage yard. It is not necessary to consider these arguments.

A determination that the search warrant is invalid "is not always necessary before reaching the issue of the objective good-faith exception of *[U.S. v.] Leon* [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)]." *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985). Even though the defendant's argument is essentially based upon inadequate descriptions, rather than probable cause, the rationale for that statement is applicable to this case. *United States v. Breckenridge*, 782 F.2d 1317 (5th Cir.1986).

"The teaching of *Leon's* good-faith exception is that evidence pursuant to a warrant issued by a detached and neutral magistrate should not be excluded, irrespective of the actual validity of the warrant, so long as the officer conducting the search acted in objectively reasonable reliance on

that warrant." *State v. Brown*, 708 S.W.2d 140, 145 (Mo. banc 1986).

■ In argument the defendant acknowledges *Leon*. But he first argues that even if under *Leon* the evidence was not required to be excluded by the Fourth Amendment, it is required to be excluded by reason of Mo. Const. Art. I, § 15 (1945), and § 542.276, RSMo Cum.Supp.1984. In support of that contention he cites *State v. Berkwit*, 689 S.W.2d 763 (Mo.App.1985). That case is not applicable. In that case the issuing judge was acting in excess of his territorial jurisdiction. It is established the "good-faith exception" of *Leon* is applicable to the provisions of the Constitution and statutes of this state. State v. Brown, supra.

■ *Leon* categorizes four instances in which the good-faith exception is not applicable. The first of those instances is when a judge "in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)." *United States v. Leon*, supra, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. The defendant contends that the first instance is applicable because "the issuing judge was misled by information which the affiants knew was false—i.e.: the description of the stolen silver and blue Chevrolet pickup matched the gray GMC or Chevrolet pickup only partially observed by the officers 200 yards away." Edrick had described the stolen pickup as silver and blue. In driving past the salvage yard, the officers observed what appeared to match that description. Whether a motor vehicle color is silver or gray is dependent upon the terminology used by the beholder. "To be entitled to an evidentiary hearing under *Franks*, a defendant must offer substantial proof that the affiant's statement was deliberately false or demonstrated reckless disregard for the truth." Project: Criminal Procedure, 74 Geo.L.J. 499, 527–28 (1986). The discrepancy relied upon by the defendant does not meet that standard.

[3] The defendant next implicitly invokes the fourth instance in which *Leon* declares the good-faith exception is not applicable. "Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Leon,* supra, 468 U.S. at 923, 104 S.Ct. at 3422, 82 L.Ed.2d at 699. He contends this instance is applicable because the two warrants authorized seizure of the same motor vehicles at two different locations. That fact does not cause either warrant to be so facially invalid. Each of the two places was occupied by the defendant. The stolen vehicles were mobile. "Here it was proper for the magistrate to direct a search of both of the locations identified in the affidavit because it was reasonable that the equipment would be found at either or both of the premises." *United States v. Hillyard,* 677 F.2d 1336, 1339 (9th Cir.1982). See *United States v. Breckenridge,* supra.

■ In argument under his first point, the defendant contends the applicable search warrant was invalid because of its use of the generic terms "other stolen vehicles and parts of stolen vehicles." As stated, it is not necessary to pass upon the validity of the search warrant. However, it is appropriate to observe that the use of generic terms does not per se cause a search warrant to be invalid. "A warrant is valid if the description is sufficiently definite to enable the executing officer to reasonably ascertain and identify the place to be searched and the objects to be seized." *United States v. Williams,* 687 F.2d 290, 292–293 (9th Cir.1982). The requirement of particularization is relative. "Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Blum,* 753 F.2d 999, 1001 (11th Cir.1985).

Under these standards it has been declared, "So long as officers can distinguish between legally and illegally possessed property on the basis of objective, articulated standards, a search warrant based on probable cause may direct inspection of premises containing a generic class of items, a portion of which are believed to be stolen or contraband." *United States v. Pollock,* 726 F.2d 1456, 1466 (9th Cir.1984). Also see *United States v. DeLuna,* 763 F.2d 897 (8th Cir.1985); *United States v. Strand,* 761 F.2d 449 (8th Cir.1985); *United States v. Hillyard,* supra; *State v. Johnson,* 677 S.W.2d 330 (Mo.App.1984). Cf. *United States v. Blum,* supra, in which "miscellaneous merchandise fraudulently obtained from vendors throughout the United States" was held sufficient. *Id.* at 1001.

■ In considering defendant's point, "[t]he question here is not the legal validity of the warrant but the reasonableness of the officers' reliance on it." *United States v. Accardo,* 749 F.2d 1477, 1481 (11th Cir. 1985). While not set forth in the warrant, the evidence clearly demonstrates the officers had an objective standard or method to use in identifying stolen vehicles and parts of stolen vehicles at the shop or salvage yard. The officers used that standard. There was nothing in the description of the things to be seized that under the objective standard of *Leon* would cause reasonably well-trained officers to be unable to reasonably presume the search warrant to be valid. *United States v. Blum,* supra; *United States v. Accardo,* supra. Cf. *United States v. Savoca,* 761 F.2d 292 (6th Cir.1985). The defendant's first point is denied.

The defendant's second point concerns the verdict directing instructions. Those instructions submitted the 13 counts of receiving stolen property as felonies. Section 570.080.3 declares that receiving stolen property is a class A misdemeanor "unless the property involved has a value of one hundred fifty dollars or more, or the person receiving the property is a dealer in goods of the type in question,...." One of those verdict directing instructions submitted the issue of value. The other 12 submitted a finding the defendant was in

the business of buying and selling goods of the type described in the instruction.

The defendant's second point is that 11 of the latter verdict directing instructions were erroneous "for the reason that the information did not allege a value of the stolen property and the defendant was not alleged to have received the stolen property so as to make the enhancement provisions of Section 570.080.3, R.S.Mo., applicable." Only by resorting to the defendant's argument can it be found "wherein and why" he contends those instructions were erroneous.

He first cites § 570.010(11) which defines "receiving" as "acquiring possession, control or title or lending on the security of the property." He observes that this definition does not include retaining, keeping or disposing of. He then notes that § 570.080.3 refers to "receiving stolen property." He therefore argues that this enhancement provision of § 570.080.3 is applicable only to receiving as defined in § 570.010(11) and not receiving stolen property as defined in § 570.080.1. This result does not follow.

 Section 570.080.1 defines multiple ways the offense of receiving stolen property can be committed. One of those ways has reference to the statutory definition of receiving contained in § 570.010(11). But, § 570.080.1 also defines receiving stolen property as "retains or disposes of property of another." "Receiving stolen property" as used in § 570.080.3 refers to the offense as defined in § 570.080.1. Each count in the information charged the defendant kept all or part of a described vehicle for the purpose of depriving the owner of the same. Each instruction submitted the issue of whether or not the defendant retained the described property for the purpose of using or disposing of it in such a way that made recovery by the owner unlikely. Section 570.080.3 is applicable to the offense charged and submitted against the defendant.

Finally, while the same is not within the scope of his second point the defendant argues "there was no evidence Defendant was in the business of selling automobile parts, engines, transmissions, golf clubs, transaxles, etc." The defendant held an automobile dealers license. One officer testified he inspected 75 to 100 motors and transmissions at the Watson property. He added, "I also inspected frames, frame sections, pickup bodies, car bodies and etc. So we're talking about numerous more articles than the 100." The record is replete with evidence the defendant was a dealer in motor vehicles and motor vehicle parts. The defendant's argument to the contrary is patently without a factual basis. His second point is denied and the judgment is affirmed.

PREWITT, C.J., and JAMES H. KEET, Jr. and DORMAN L. STEELMAN, Special Judges, concur.