[Cite as *State v. Shaskus*, 2019-Ohio-2190.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-340 |
| v. | : | (C.P.C. No. 13CR-4970) |
| James F. Shaskus, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on June 4, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, James F. Shaskus, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to no contest pleas to five counts of pandering sexually oriented matter involving a minor. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On September 18, 2013, Shaskus was indicted on five counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322. On April 18, 2014, Shaskus filed a motion to suppress: (1) e-mail messages from the account of "jack.flash75@yahoo.com" (the "Jack Flash account") obtained from Yahoo, Inc. ("Yahoo"), pursuant to a search warrant issued October 21, 2011 (the "Yahoo warrant"), and (2) digital images, data, and e-mails stored on the hard drive of a computer seized from his residence,

pursuant to a search warrant issued November 14, 2011 (the "residence warrant"). The trial court conducted a hearing on the motion to suppress, and heard testimony from David R. Hunt, formerly a detective with the Franklin County Sheriff's Office, regarding the investigation that led to the search warrants. The trial court also heard testimony from Shaskus. Following the hearing, the trial court issued a decision granting the motion to suppress the e-mail messages from the Jack Flash account, finding the Yahoo warrant was overbroad.

{¶ 3} Plaintiff-appellee, State of Ohio, appealed to this court; we held the Yahoo warrant was not impermissibly overbroad and reversed the trial court's decision granting the motion to suppress the evidence obtained from the Jack Flash account. *State v. Shaskus*, 10th Dist. No. 14AP-812, 2016-Ohio-7942, ¶ 56, 60. We expressly noted the trial court had not reached the merits of Shaskus's challenge to the residence warrant and indicated the trial court should decide that issue in the first instance on remand. *Id.* at ¶ 60, fn. 2.

{¶ 4} On remand, the parties submitted memoranda regarding suppression of evidence obtained pursuant to the residence warrant and the trial court conducted a hearing where counsel presented arguments, but no additional evidence was taken. Following the hearing, the trial court denied the motion to suppress the evidence seized pursuant to the residence warrant. Shaskus then entered no contest pleas to all five charges in the indictment, and the trial court imposed one year of community control.

## II. Assignment of Error

{¶ 5} Appellant appeals and assigns the following sole assignment of error for our review:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE DIGITAL IMAGES OF CHILD PORNOGRAPHY FOUND ON HIS COMPUTER DURING THE EXECUTION OF A SEARCH WARRANT FOR HIS RESIDENCE.

## III. Analysis

{¶ 6} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. The trial court acts as the finder of fact in

evaluating a motion to suppress and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to dismiss."). When a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies; that is a question of law to be reviewed de novo. *Castagnola* at ¶ 32.

{¶ 7} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or other things to be seized." The Ohio Constitution contains a nearly identical provision. Ohio Constitution, Article I, Section 14.[1]

{¶ 8} When determining whether a search warrant affidavit demonstrates probable cause, a magistrate must " 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S.

---

[1] Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment to the United States Constitution. *See State v. Robinette*, 80 Ohio St.3d 234, 239 (1997); *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981). However, it is well recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 42 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against searches and seizures made by members of law enforcement who lack authority to make an arrest); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 22 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors).

213, 238-39 (1983). "Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *Castagnola* at ¶ 34.

{¶ 9} An appellate court reviewing the sufficiency of probable cause contained in an affidavit in support of a search warrant must not substitute its judgment for that of the magistrate but, rather, ensure that the magistrate "had a substantial basis for concluding that probable cause existed." *George* at paragraph two of the syllabus. This analysis is undertaken with great deference to the magistrate's determination of probable cause, and marginal cases should be resolved in favor of upholding the warrant. *Id.*

{¶ 10} The history of the investigation leading to the charges against Shaskus is set forth more fully in this court's prior decision. *See Shaskus* at ¶ 4-16. As relevant to the present appeal, Detective Hunt testified at the suppression hearing that he was involved in an investigation of online advertisements indicating that individuals were seeking to have sexual encounters with minors. *Id.* at ¶ 5. Detective Hunt determined one advertisement offering to provide a young girl for a sexual encounter was placed on Craigslist by an individual named Virgil Pennington. *Id.* at ¶ 8. After obtaining a search warrant for Pennington's e-mail, Detective Hunt identified an e-mail exchange on September 27, 2011 between Pennington and the Jack Flash account in which the owner of the Jack Flash account sent a photograph of a fully clothed young girl and suggested he would be willing to trade the girl for a sexual encounter in exchange for a sexual encounter with the young girl described in Pennington's Craigslist advertisement. *Id.* at ¶ 9-10. Detective Hunt obtained the Yahoo warrant, directing Yahoo to provide evidence of the crime of compelling prostitution from the Jack Flash account. *Id.* at ¶ 11. In response, Detective Hunt received the Internet Protocol ("IP") address used to access the Jack Flash account and more than 3,000 e-mails from the Jack Flash account. *Id.* at ¶ 12. Detective Hunt was able to determine that the IP address used to access the Jack Flash account was associated with a physical address on Hunter Avenue, in Columbus Ohio. *Id.*

{¶ 11} Detective Hunt testified he reviewed the e-mails from the Jack Flash account focusing on messages with attachments, because he sought to identify the girl whose photograph was attached in the e-mail exchange with Pennington. Detective Hunt did not

find any other photographs of that girl, but identified earlier e-mails that contained "numerous images of, what [he] believe[d] to be, child pornography." (July 7, 2014 Tr. at 26.) Detective Hunt prepared an affidavit in support of a search warrant for the Hunter Avenue address indicating that these images of child pornography were sent from an unidentified e-mail account to the Jack Flash account in March 2009 and that the owner of the Jack Flash account responded favorably (the "March 2009 e-mail exchange"). The residence warrant sought evidence of pandering obscenity involving a minor, illegal use of a minor in nudity oriented material, disseminating matter harmful to juveniles, and endangering children. As relevant to the present appeal, Detective Hunt attested to the following facts in the affidavit in support of the residence warrant:

> On November 8, 2011, the affiant was reviewing the 3,000+ e-mails from the jack.flash75@yahoo.com account. Dozens of e-mails from this account to assorted Craigslist postings included photographs of "Jack Flash" * * *. Further investigation revealed that one James F. Shaskus, * * *, also resides at * * * Hunter Avenue, Columbus. The BMV photo of Shaskus matches those utilized by "Jack Flash" in the numerous yahoo e-mails.

> Also on November 8, 2011, several e-mails were exchanged between jack.flash@yahoo.com and another e-mail address in March 2009. The other e-mail address sent a couple of dozen images of child pornography to "Jack Flash" who replied to the sender:

> "hey I want to see whatever you want to show me no limits"

> In another e-mail reply, "Jack Flash" states[:]

> "and are any of these your kids i love everything so far, but where is the story?"

(State's Ex. C) Based on the facts set forth in the affidavit, a municipal court judge approved the residence warrant. Pursuant to the residence warrant, police officers recovered a computer; Detective Hunt testified that a forensic examination of the computer revealed over 900 images of child pornography. *Shaskus* at ¶ 16.

{¶ 12} Shaskus presents three arguments in support of his claim that the trial court erred by denying his motion to suppress the evidence obtained pursuant to the residence warrant. First, Shaskus argues the affidavit in support of the residence warrant lacked

sufficient facts to establish probable cause that he used a personal computer at his residence to access the child pornography images contained in the March 2009 e-mail exchange, claiming it could have been accessed using another device, such as a smart phone, or a computer at another location, such as a place of employment or a public library. Second, Shaskus argues the facts contained in the affidavit in support of the residence warrant were too stale to support a probable cause finding that any computer used to access the child pornography images contained in the March 2009 e-mail exchange still existed at the time the search warrant was sought. Third, Shaskus argues the affidavit in support of the residence warrant failed to describe ongoing activity that would support a probable cause finding that any computer used to access the Jack Flash account would be found at the address to be searched. Because Shaskus's arguments are related, we will consider them together.

{¶ 13} Shaskus claims Detective Hunt's affidavit in support of the residence warrant failed to establish he used a computer to access the Jack Flash account when participating in the March 2009 e-mail exchange. Shaskus also claims the March 2009 e-mail exchange was a single incident that occurred more than two years before the residence warrant was sought, and therefore the information in the affidavit was too stale to support an inference that any computer used to access the Jack Flash account in March 2009 remained in existence at the time the residence warrant was issued. Shaskus argues there was no evidence of ongoing child pornography activity to support an inference that a computer containing evidence of such activity would be found at the Hunter Avenue address. He also asserts Detective Hunt failed to disclose that internet service for the IP address linked to the Hunter Avenue address began in August 2009, after the March 2009 e-mail exchange occurred.

{¶ 14} Shaskus cites the Supreme Court of Ohio's decision in *Castagnola* in support of his claim that the trial court erred by denying his motion to suppress. In *Castagnola*, a police source reported receiving text messages from Castagnola bragging about damaging a city prosecutor's vehicles. *Castagnola* at ¶ 2. The source subsequently recorded a conversation in which Castagnola admitted to damaging the vehicles and stated he had to "look up" the city prosecutor's address on court records. *Id.* Using that information, a police detective sought a warrant to search Castagnola's residence for records and

documents stored on computers related to the crimes of retaliation, criminal trespassing, criminal damaging, and possession of criminal tools. *Id.* at ¶ 3-4. In the affidavit in support of the search warrant, the detective paraphrased the contents of the recorded conversation and stated that Castagnola admitted to looking up the prosecutor's address online. *Id.* at ¶ 8. Pursuant to the search warrant, items were seized from Castagnola's house, including two computers, which were found to have evidence of child pornography. He was then indicted on charges of pandering sexually oriented material. *Id.* at ¶ 11-14.

{¶ 15} Castagnola moved to suppress the evidence obtained pursuant to the search warrant. At a suppression hearing, the detective claimed he believed Castagnola used the term "online" during the recorded conversation and further explained his belief that it was likely Castagnola searched for the information online. *Id.* at ¶ 18-25. The trial court denied the motion to suppress, acknowledging that Castagnola did not use the term "online" during the recorded conversation, but finding that the detective's paraphrase was a fair characterization of the substance of the conversation. *Id.* at ¶ 27. The court of appeals affirmed the trial court's ruling on the motion to suppress. *Id.* at ¶ 30.

{¶ 16} On appeal, the Supreme Court held that the detective's failure to disclose that he had inferred that Castagnola searched for the prosecutor's information online was "so significant that it 'cross[ed] the line between permissible interpretation and usurpation' of the magistrate's inference-drawing authority." *Id.* at ¶ 59, quoting *People v. Caffott*, 105 Cal.App.3d 775, 783 (Cal.App.1980). The *Castagnola* court "reject[ed] the trial court's supposition that statements sent by text message admitting criminal activity create a substantial basis for concluding that evidence of a crime will be found on a computer." *Id.* at ¶ 63. Further, the court found that "while there was probable cause to believe that Castagnola had searched for [the prosecutor's] address, the method of his search was not clear" and noted that "[a]lthough we are in the computer age, records of court activity still exist in paper form and are available to the public in clerk of courts' offices around the state." *Id.* Thus, Castagnola's admission that he had to "look up" the city prosecutor's address did not provide a substantial basis to conclude that he conducted the search online. The court reversed the trial court's decision and ordered the evidence obtained under the search warrant to be suppressed. *Id.* at ¶ 108.

{¶ 17} Unlike *Castagnola*, the present case does not involve an impermissible police inference that evidence of criminal acts on one type of electronic device created probable cause that evidence of criminal acts would exist on another type of electronic device. In this case, the residence warrant affidavit established that Shaskus was using the Jack Flash account in September 2011 when he responded to Pennington's Craigslist advertisement. It also established that the IP address used when accessing the Jack Flash account in September 2011 was linked to the Hunter Avenue address. It is true that the residence warrant affidavit did not establish what device Shaskus used to access the Jack Flash account when the March 2009 e-mail exchange occurred or the location of such device. However, Detective Hunt testified at the suppression hearing that an e-mail message was generally unrecoverable more than 24 hours after being deleted by the user. Here, the March 2009 e-mail exchange was still contained in the Jack Flash account in October 2011 when Detective Hunt received the response to the Yahoo search warrant. Thus, Shaskus still had access to the images of child pornography contained in the March 2009 e-mail exchange and could have accessed or downloaded them via a personal computer at any time thereafter.

{¶ 18} Although the March 2009 e-mail exchange occurred more than two years before the residence warrant was issued, we reject Shaskus's argument that the information in the affidavit was too stale to support a finding of probable cause. "The factors to consider in determining whether the information in [an] affidavit is stale include the character of the crime, the criminal, the thing to be seized and in particular whether it is perishable, the place to be searched, and the nature of the incident as either isolated or ongoing criminal activity." *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 21. This court has previously acknowledged that "the viewing of child pornography is, by its nature, a solitary and secretive crime," and therefore, a magistrate approving a search warrant may reasonably assume that a suspect "would keep his computer-based images of child pornography in a secret safe place, such as his home." *State v. Ingold*, 10th Dist. No. 07AP-648, 2008-Ohio-2303, ¶ 36. Moreover, "Ohio courts have determined an issuing magistrate * * * may notice that conduct involving child pornography is of a continuing nature." *Eal* at ¶ 24. In this case, Detective Hunt's affidavit in support of the residence warrant indicated that Shaskus had a favorable response to the child pornography images he received in the

March 2009 e-mail exchange and expressed interest in receiving additional similar material.  Additionally, Shaskus's e-mail conversation with Pennington in response to the Craigslist advertisement indicated a continuing sexual interest in children. Given the deferential standard for review of a magistrate's determination of probable cause, we conclude that under these circumstances the affidavit in support of the residence warrant provided a substantial basis for the magistrate to conclude there was probable cause that evidence of the relevant crimes would be found at Shaskus's residence.

{¶ 19} Because we conclude the magistrate had a substantial basis for finding probable cause to issue the residence warrant, we need not reach the question of whether the good-faith exception applies in this case.

{¶ 20} Accordingly, we overrule Shaskus's sole assignment of error.

## IV. Conclusion

{¶ 21} For the foregoing reasons, we overrule Shaskus's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and LUPER SCHUSTER, J., concur.