[Cite as *State v. Dixon*, 2022-Ohio-4532.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-152 |
| v. | : | (C.P.C. No. 19CR-4387) |
| Joseph E. Dixon, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on December 15, 2022

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee. **Argued:** *Darren M. Burgess*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Joseph E. Dixon, appeals from the March 12, 2021 judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to no contest pleas to five counts of pandering sexually oriented matter involving a minor. In particular, appellant appeals the court's December 2, 2020 decision and entry denying the motion to suppress evidence of pandering sexually oriented matter involving a minor found upon execution of a search warrant. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}   On September 3, 2019, appellant was indicted on five counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322,[1] all felonies of the fourth degree.  On February 27, 2020, appellant filed a motion to suppress the evidence obtained as a result of the execution of a search warrant issued October 17, 2016.  The trial court conducted a hearing on the motion to suppress on November 2, 2020.

{¶ 3}   In the affidavit on which the search warrant was issued, affiant Sergeant Jeff Zech with the Franklin County Sheriff's Office ("Sheriff's Office"), averred that in October 2015 the United States Department of Homeland Security Investigations ("HSI") in Phoenix, Arizona, commenced an investigation into an internet-based video conferencing application used by persons interested in exchanging child pornography.  In order to preserve the ongoing investigation, the affiant referred to the application as "Application A."  On December 11, 2015, at 1750 hours GMT, an HSI agent, acting in an undercover capacity, signed into Application A and entered an Application A meeting room without a password.  The HSI agent viewed one user displaying to all other users two videos depicting child pornography.  The agent also observed a user with a display name of "Jay Smith Prv" sitting nude and masturbating.

{¶ 4}   The United States Department of Justice subpoenaed Application A on December 17, 2015, and obtained the subscriber and login information related to the users in this particular Application A meeting.  The subpoena information revealed that Jay Smith Prv was logged into the Application A meeting on December 11, 2015 from 17:39 GMT to 18:31 GMT from the IP address 104.11.134.223.  It was determined, pursuant to the online database American Registry for Internet Numbers ("ARIN"), that the IP address was registered to AT&T.  The Department of Justice served a subpoena on AT&T on March 22, 2016, and on March 27, 2016 received in response information which revealed that the IP

---

[1] In relevant part, R.C. 2907.322 states: "(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

(1) Create, record, photograph, film, develop, reproduce, or publish any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality;

* * *

(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor or impaired person participating or engaging in sexual activity, masturbation, or bestiality[.]

addresses account holder was William Wynnyk. The information also revealed Wynnyk's e-mail address and a physical address as 830 South Ohio Avenue in Columbus, Ohio. However, upon checking with the property manager at that address, it was revealed that Wynnyk had moved.

{¶ 5} Investigators determined Wynnyk was living at 1107 Oak Bay Drive, Galloway, Ohio ("Oak Bay residence") beginning July 21, 2016, and confirmed the same through surveillance observing a vehicle registered to Wynnyk parked in the driveway, and through a subpoena to AT&T which revealed the internet subscriber at that address was also William Wynnyk.

{¶ 6} On October 17, 2016, a judge of the Franklin County Municipal Court issued a search warrant for the Oak Bay residence. The Sheriff's Office executed the search warrant. Investigators discovered that appellant was living at the Oak Bay residence with Wynnyk, a.k.a. Jay Smith Prv. Wynnyk and appellant identified electronic devices which belong to each of them and also told investigators they used each other's electronic devices.

{¶ 7} Sergeant Zech and other detectives at the Sheriff's Office conducted forensic examinations of the electronic devices seized during execution of the search warrant. They found child pornography on electronic devices owned by Wynnyk and appellant. They also found usernames that could be linked to appellant on the same electronic devices. They further found online conversations in which Jay Smith Prv described plans to sexually abuse children and live stream the abuse.

{¶ 8} Appellant was indicted on five counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322, all felonies of the fourth degree. On February 27, 2020, appellant filed a motion to suppress the evidence obtained through the execution of the search warrant. Plaintiff-appellee, State of Ohio, filed a memorandum contra. The court held a hearing and received testimonial evidence on November 2, 2020. On December 2, 2020, the court filed a decision denying appellant's motion to suppress. On January 26, 2021, appellant entered no contest pleas to the five counts in the indictment, and on March 12, 2021, the trial court sentenced appellant to 36 months of community control on risk reduction supervision - sex offender caseload.

{¶ 9} Appellant timely appealed.

## II.  Assignment of Error

{¶ 10} Appellant appeals and assigns the following sole assignment of error for our review:

> The trial court erred in denying the appellant's motion to suppress as the four corners of the affidavit did not provide the magistrate with information establishing probable cause to believe that child pornography would be found at [the residence].

## III.  General Law Regarding Issuance of a Search Warrant

{¶ 11}  The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.

The Ohio Constitution, Article I, Section 14 states:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.[2]

{¶ 12} The Supreme Court of Ohio has held that " '[c]entral to the *Fourth Amendment* is the probable-cause requirement.  While a probable-cause determination for

---

[2] Historically, the protections afforded by Article I, Section 14 of the Ohio Constitution have been construed as coextensive with the protections of the Fourth Amendment to the United States Constitution. *See State v. Robinette*, 80 Ohio St.3d 234, 239 (1997); *State v. Geraldo*, 68 Ohio St.2d 120, 125-26 (1981). However, it is well recognized that states may "rely on their own constitutions to provide broader protection for individual rights, independent of protections afforded by the United States Constitution." *Robinette* at 238. *See Arnold v. Cleveland*, 67 Ohio St.3d 35, 42 (1993), paragraph one of the syllabus ("In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall."). Thus, in certain circumstances, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution as providing greater protection than the Fourth Amendment to the United States Constitution. *See State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against searches and seizures made by members of law enforcement who lack authority to make an arrest); *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 22 (holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors).

an arrest warrant is similar in nature to that for a search warrant, a search-warrant inquiry is much more complex and presents special considerations.' " (Emphasis sic.) *State v. Shaskus*, 10th Dist. No. 14AP-812, 2016-Ohio-7942, ¶ 25-26, quoting *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 34, citing 2 LaFave, *Search and Seizure*, Section 3.1(b) (5th Ed.2012). "Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched." *Castagnola* at ¶ 34, citing 2 LaFave at Section 3.7(a), (b), and (d).

{¶ 13} "A warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the property and things to be seized." R.C. 2933.22. An affidavit in support of a search warrant need not demonstrate proof beyond a reasonable doubt, or even proof by a preponderance of the evidence, before a judicial officer may find probable cause. *State v. Ingold*, 10th Dist. No. 07AP-648, 2008-Ohio-2303, ¶ 19. Rather, when determining whether a search warrant affidavit demonstrates probable cause, a magistrate must " ' "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " *State v. Shaskus,* 10th Dist. No. 18AP-340, 2019-Ohio-2190, ¶ 8, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

{¶ 14} The information considered by a judge or magistrate in determining whether to issue a search warrant is provided by affidavit. The affidavit is sometimes supplemented by the affiant's oral testimony under oath. R.C. 2933.23 states in relevant part:

> A search warrant shall not be issued until there is filed with the judge or magistrate an affidavit that particularly describes the place to be searched, names or describes the person to be searched, and names or describes the property to be searched for and seized; that states substantially the offense in relation to the property and that the affiant believes and has good cause to believe that the property is concealed at the place or on the person; and that states the facts upon which the affiant's belief is based. The judge or magistrate may demand other and further evidence before issuing the warrant. If the judge or magistrate is satisfied that grounds for the issuance of the

warrant exist or that there is probable cause to believe that they exist, he shall issue the warrant, identifying in it the property and naming or describing the person or place to be searched.

Crim.R. 41(C)(1) and (2) state in relevant part:

A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.

If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched or the person or property to be tracked.

## IV. Standard of Review

{¶ 15} Appellate review of a motion to suppress presents a mixed question of law and fact. *Castagnola* at ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. The trial court acts as the finder of fact in evaluating a motion to suppress and is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Burnside* at ¶ 8. Therefore, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. See also State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6 ("We apply a de novo standard in determining whether the trial court properly denied appellant's motion to dismiss."). When a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies; that is a question of law to be reviewed de novo. *Castagnola* at ¶ 32.

{¶ 16} " 'In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo*

determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant.' " *Shaskus*, 2016-Ohio-7942, ¶ 26, quoting *George* at paragraph two of the syllabus. Rather, it is the duty of a reviewing court to simply " 'ensure that the magistrate had a substantial basis for concluding that probable cause existed.' " *Id.*, quoting *Smith* at paragraph two of the syllabus. Thus, " '[i]n conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.' " *Id.*, quoting *Smith* at paragraph two of the syllabus. Furthermore, the very nature of the questions presented requires a case-by-case fact-driven analysis. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, ¶ 14.

## V. Analysis

{¶ 17} In support of his assignment of error, appellant argues: (1) the search warrant was based on impermissible inferences and incomplete information, and (2) the search warrant was based on stale information. As these arguments are intertwined, we will address them together.

{¶ 18} Appellant argues the judge who issued the search warrant ("issuing judge") in this case made several impermissible inferences when he found there was probable cause to issue the warrant: (1) that Jay Smith Prv actually viewed the child pornography files being displayed, (2) that Jay Smith Prv asked for, traded, downloaded, or possessed the child pornography images, and (3) that child pornography images were still located on his computers and electronic devices in Jay Smith Prv's Oak Bay residence. Appellant argues these inferences were impermissible because they were based on incomplete information in that the affidavit describes only "one incident of allegedly *viewing* child pornography ten months prior to the issuance of the warrant and at a different residence from the one searched." (Emphasis sic.) (Appellant's Brief at 15.)

{¶ 19} The trial court found:

> While [Dixon] has suggested there is no way to prove [Jay Smith Prv] was masturbating in response to the child pornography being displayed in the same meeting room, the Court finds this connection is sufficient to establish the probability that [Jay Smith Prv] was engaging in child pornography. Given the fact that [Jay Smith Prv] was in a

meeting room where child pornography was being openly requested and displayed, and upon switching views [Jay Smith Prv] was immediately observed masturbating in the same meeting room, the [issuing] judge could make a practical, common-sense determination that [1] [Jay Smith Prv] was probably engaging[3] in child pornography. It follows that the person with username [Jay Smith Prv] and the IP address associated with that username was probably engaged in child pornography and [2] had child pornography in his home.

(Dec. 2, 2020 Decision at 3.)

{¶ 20} The affidavit signed by Sergeant Zech presents facts in support of the first two inferences appellant claims to be impermissible, that appellant viewed the child pornography and that appellant possessed child pornography. The affidavit begins by describing Application A and its users as "an Internet-based video conferencing application *used by persons interested in exchanging child pornography and/or sexually abusing children*." (Emphasis added.) (Zech Aff. at 3.) It follows with a detailed description of how a user accesses Application A including the steps to: (1) download the application from the company's website, (2) create an account, and (3) invite others to an online meeting "room" associated with a 10-digit number. (Zech Aff. at 3.) The affidavit explains that during a meeting users can show a live image or video of themselves to other users in the room through a webcam; display the contents of their own computer desktops including videos and photos to other users in the room; send text messages to all the users in the room; and/or send private messages between two users in the room.

{¶ 21} The affidavit continues with details regarding the specific Application A meeting room which the undercover HSI agent accessed on December 11, 2015 at approximately 1750 hours GMT. Specifically, it states:

Within that room, the undercover agent observed that an "Application A" user displayed or streamed videos depicting child pornography,[4] i.e., visual depictions of a minor engaging

---

[3] Here, the trial court uses the term "engaging." We construe the trial court's use of the term "engaging" in the context of this particular search warrant as meaning "viewing." We base this construction on the court's summation of appellant's argument: "While [Dixon] has suggested that there is no way to prove [Jay Smith Prv] was masturbating *in response to* the child pornography being *displayed* in the same meeting room." (Emphasis added.) (Dec. 2, 2020 Decision at 3.)

[4] Appellant does not challenge the trial court's finding that the videos depicted child pornography.

in sexually explicit conduct, that were visible to the users in the room.

While recording the activity in the room, the undercover agent observed that at approximately 1756 hours GMT, an "Application A" user with the display name Jay Smith Prv ("SUBJECT DISPLAY NAME") was observed through what appears to be a web cam sitting nude and fondling his penis. The front of his body is visible except his head. The videos described above were streamed by another user immediately before the undercover agent switched views to show SUBJECT DISPLAY NAME. Additionally another user in the group chat feature requested child pornography links immediately before the undercover agent showed SUBJECT DISPLAY NAME. Since the videos and chat were displayed immediately before SUBJECT DISPLAY NAME was observed, it can be concluded that SUBJECT DISPLAY NAME was in the online meeting during the child exploitation related activity.

(Zech Aff. at 4-5.)

{¶ 22} In *Castagnola*, the Supreme Court invalidated the search of a computer which contained child pornography images. The search was conducted pursuant to a search warrant and ultimately resulted in an indictment and conviction for ten counts of pandering sexually oriented material involving a minor, felonies of the fourth degree. The court found the warrant was based on an affidavit that was not based on evidentiary fact, but rather on "layered inferences." *Id.* at ¶ 101. The Supreme Court found the search warrant affiant presented as empirical fact to the issuing magistrate hidden inferences which the affiant made based on information the affiant did not present to the issuing magistrate. The court concluded that the affiant usurped the "magistrate's inference-drawing authority." *Id.* at ¶ 59. Regarding an issuing judge or magistrate's inference drawing authority, the court generally observed:

When oral testimony is not offered in support of a search-warrant affidavit, the magistrate determines the sufficiency by "evaluating only [the facts alleged within] the four corners of the affidavit[5] and [applying] an objective reasonableness standard." *United States v. Richards*, 659 F.3d 527, 559 (6th Cir.2011), fn. 11 (Moore, J., concurring in judgment only),

---

[5] There is no indication that oral testimony was offered to the issuing judge in support of the search warrant affidavit. Therefore, although oral testimony was offered to the trial court at the hearing on the motion to suppress, we confine our analysis to the four corners of the affidavit as instructed by *Castagnola*.

> citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996). On appeal, " 'the reviewing court is concerned exclusively with the statements contained within the affidavit itself.' " *Id.*, quoting *Weaver* at 1378. Courts have held that affiants may make reasonable inferences within search-warrant affidavits.
>
> Courts have recognized that affidavits that include a factual narrative will inevitably include a number of inferences drawn by the affiant.
>
> Similarly, magistrates may make reasonable inferences when deciding whether probable cause exists to issue a warrant.

*Id.* at ¶ 39-41.

{¶ 23} Mindful that the Supreme Court directs that this is a case-by-case fact-driven analysis and " 'doubtful or marginal cases in this area should be resolved in favor of upholding the warrant,' " on the facts of this particular case, we find the trial court did not err in finding to be reasonable the issuing judge's inferences: (1) that Jay Smith Prv viewed the child pornography on Application A, and (2) that Jay Smith Prv downloaded or possessed child pornography. *Shaskus*, 2016-Ohio-7942, ¶ 26. The inferences are supported by the facts outlined by Sergeant Zech in the affidavit. In particular, Application A is an application used by persons interested in exchanging child pornography and/or sexually abusing children. Application A requires affirmative steps to use including downloading and installing the application and creating an account. The Application A meeting room online location was associated with a 10-digit number.[6] Immediately[7] after the HSI agent observed a user in the meeting room displaying two videos displaying child pornography and another user in the chat feature requesting child pornography links, the agent observed Jay Smith Prv in the meeting room nude and masturbating. Jay Smith Prv

---

[6] We do note, however, that the HSI agent accessed the meeting room without a password after signing into an Application A user account.

[7] The affidavit indicates that the HSI agent accessed the Application A meeting room at 1750 hours GMT, observed a user display the videos with child pornography and a chat request by another user for child pornography links, and then "at approximately 1756 hours GMT" observed Jay Smith Prv nude and masturbating—during a span of six minutes. (Zech Aff. at 4.) Based on this information included in the affidavit, the affiant suggests the inference that "[s]ince the videos and chat were displayed immediately before SUBJECT DISPLAY NAME was observed, it can be concluded that SUBJECT DISPLAY NAME was in the online meeting during the child exploitation related activity." (Zech Aff. at 4.)

was logged into the meeting room for 52 minutes. Thus, based on these facts and reasonable inferences drawn from these facts, we find the issuing judge had a substantial basis for concluding that probable cause existed that Jay Smith Prv both viewed child pornography and possessed child pornography.

{¶ 24} The affidavit signed by Sergeant Zech also presents facts in support of the third inference appellant claims to be impermissible, that child pornography would still be located on computers and electronic devices in Jay Smith Prv's residence at 1107 Oak Bay Drive. After presenting facts describing Application A and its users, the method for accessing Application A and regarding what took place in the meeting room of Application A on December 11, 2015, the affidavit then outlines the steps taken by investigators to identify Jay Smith Prv and the location associated with the IP address. These steps included: (1) a subpoena served on Application A for subscriber and login information related to the particular meeting room on December 11, 2015 produced an IP address for Jay Smith Prv ("the IP address") logged in from 17:39 GMT to 18:31 GMT, (2) a query of the ARIN revealed the IP address was registered to AT&T, (3) a subpoena served on AT&T produced "William WYNNYK; [***]@outlook.com, 830 S. Ohio Ave., Columbus, OH 43206" as the account holder of the IP address, (4) a check with the property manager of 830 South Ohio Avenue revealed Wynnyk moved out of the residence, (5) research through publicly available databases revealed Wynnyk resided at the Oak Bay residence since July 21, 2016, (6) the Oak Bay address was corroborated by: (a) a check with the Division of Motor Vehicles that revealed Jeffrey William Wynnyk resided at that address, (b) surveillance revealed a vehicle registered to Wynnyk parked in the driveway of that address, (c) a search of Accurint Information public records database revealed Wynnyk's address as that address, and (d) a subpoena issued to AT&T on October 14, 2016 requesting subscriber information related to service at the Oak Bay residence revealed the subscriber was William Wynnyk with Wynnyk's e-mail address. The search warrant was signed by the issuing judge on October 17, 2016, ten months after Jay Smith Prv was observed in the meeting room.

{¶ 25} Appellant argues that *United States v. Coon*, W.D.N.Y. No. 10-CR-110A (May 16, 2011), 2011 U.S. Dist. LEXIS 51968, *United States v. Ohlson*, W.D.N.Y. No. 11-CR-225-A, 2012 U.S. Dist. LEXIS 36009, and *United States v. Raymonda*, 780 F.3d 105, 110

(2015), support a conclusion that the facts presented by Sergeant Zech were stale and, thus, did not support an inference and probable cause conclusion that child pornography would be found at Wynnyk's Oak Bay residence ten months after Jay Smith Prv joined the meeting room on Application A.

{¶ 26} In *Coon*, a Federal District Court determined that probable cause did not exist to support the issuance of a search warrant for evidence of child pornography on Coon's computers where information was provided regarding a single child pornography image that had been downloaded almost one year before the warrant was issued. In making its determination, the court observed that no evidence was presented that additional illicit downloads occurred or that Coon subscribed to or had a paid membership to illicit internet publications or e-groups during the one-year period. The court further observed that the agents had information that the defendant in the case had terminated internet service. Finally, the court considered significant that "nothing about that information confirmed to the agents that computer would still be located at the defendant's address." *Coon* at 8. In *Ohlson*, the same federal district court and judge followed *Coons* and determined that probable cause did not exist to support the issuance of a search warrant for evidence of child pornography where an IP address was associated with the residence only for a five-day period during which an indeterminate number of thumbnail images of child pornography were accessed and at least three images were enlarged more than a year prior to when the warrant was issued when there was "no other, fresher evidence of a child pornography offense associated with the same IP address or with the defendant's residence." *Id.* at 6. In *Raymonda*, the Second Circuit Federal Court of Appeals determined that probable cause did not exist to support the issuance of a search warrant for evidence of child pornography on Raymonda's computers where information was provided regarding a single incident of accessing child pornography images 9-months before the warrant was issued. Information was provided that Raymonda viewed thumbnails of child pornography for 17 seconds on a single day without viewing or downloading any individual images. The court held that "a single incident of access to thumbnail images of child pornography, absent any other circumstances suggesting that the suspect accessed those images deliberately or has a continuing interest in child pornography, fails to establish probable cause that the suspect will possess illicit images

many months later." *Raymonda* at 109. The court observed that there was no evidence that Raymonda clicked on any of the thumbnails or saved or downloaded the thumbnails. The court further observed that an agent had uncovered the website through an innocuous link on the message board of another site not explicitly associated with child pornography. The court held that the affidavit "was at least equally consistent with an innocent user inadvertently stumbling upon a child pornography website, being horrified at what he saw, and promptly closing the window" and far from suggesting a knowing and intentional search for child pornography. *Id*. at 117.

{¶ 27} As we have explained above in concluding that the first two inferences are supported by the facts outlined in the affidavit before us, this case differs significantly from *Raymonda, Coons*, and *Ohlson* as the facts and inferences do suggest a knowing and intentional search for child pornography. Furthermore, we do not find to be persuasive *Coon*'s focus on the lack of evidence that the particular computer involved would still be located at the defendant's address.

{¶ 28} Once again, mindful that the Supreme Court directs that this is a case-by-case fact-driven analysis and "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant," on the facts of this particular case, we find the trial court did not err in finding to be reasonable the issuing judge's inference that the child pornography images were still located on computers and electronic devices in Jay Smith Prv's Oak Bay residence. *Shaskus*, 2016-Ohio-7942, at ¶ 26. The inferences are supported by the facts outlined by Sergeant Zech in the affidavit. In particular, the trail[8] of the IP address from the Application A meeting room on December 11, 2015 to 830 South Ohio Avenue to the Oak Bay residence and the confirmation that the IP address belonged to Wynnyk at all times. Thus, based on these facts and reasonable inferences drawn from these facts, we find the issuing judge had a substantial basis for concluding that probable cause existed that Jay Smith Prv still possessed child pornography images on his computers and electronic devices in his Oak Bay residence ten months after he was observed in the Application A meeting room.

---

[8] We observe the search warrant refers to both William Wynnyk and Jeffrey William Wynnyk. However, appellant did not point out these different designations and did not argue that the different designations contribute to the lack of sufficient evidence for a probable cause finding.

{¶ 29} Finally, appellant also argues that the affidavit lacked any information regarding the training and expertise of the affiant in investigating crimes involving child pornography. Often times, an affiant with such training and expertise will provide information in an affidavit regarding common characteristics of a collector of child pornography that the affiant has learned or observed over the course of similar investigations. As appellant suggests, it is true that an issuing judge or magistrate may rely on such general information as part of the totality of the circumstances to infer that the subject of or location identified in an affidavit possesses evidence of a crime involving child pornography and in determining whether probable cause exists to issue a warrant. *See Ingold* ("[t]he expertise and experience of the officer are to be taken into account in applying the Fourth Amendment probable cause test, even if the officer would not qualify as an expert witness on the subject"). (Internal quotations and citations omitted.) *Id.* at ¶ 34.

{¶ 30} Nevertheless, even without information regarding Sergeant Zech's training and experience, our court and others have observed certain general characteristics of collectors of child pornography. In *Ingold*, we observed "viewing of child pornography is, by its nature, a solitary and secretive crime. Thus, the issuing judge could reasonably assume that appellant would keep his computer-based images of child pornography in a secret safe place, such as his home, and that he would transport the computer that housed his collection to his new residence." *Id.* at ¶ 36. In *State v. Eal*, 10th Dist. No. 11AP-460, 2012-Ohio-1373, ¶ 22, we observed that "child pornography collectors tend to retain their collections for long periods of time helps prevent otherwise dated information from becoming stale." *Id.* at ¶ 22.

{¶ 31} With this in mind, we do not find to be persuasive appellant's argument that the affidavit's lack of information regarding Sergeant Zech's training and experience compelled a finding of insufficient evidence to support probable cause.

## VI. Conclusion

{¶ 32} Considering all the facts presented in the affidavit and the reasonable inferences supported by such facts made by the issuing judge, we find the issuing judge had a substantial basis for concluding that there existed probable cause to issue the warrant. Therefore, we conclude the trial court did not err in denying the motion to suppress.

{¶ 33} For the foregoing reasons, we overrule appellant's sole assignment of error and affirm the December 2, 2020 decision and entry of the Franklin County Court of Common Pleas denying appellant's motion to suppress and the subsequent March 12, 2021 judgment and conviction.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., & MENTEL, J., concur.

———————